MURGUIA, Circuit Judge,
dissenting in part:
I respectfully dissent. I would affirm the district court’s order granting Andrews relief due to ineffective assistance of counsel at the penalty phase of his trial. ,
. Andrews was convicted of three heinous ■and appalling murders. His prior crimes were violent and antisocial. But due to defense counsel’s constitutionally inadequate penalty phase investigation, the jurors who sentenced Andrews to death never knew that he was subjected for two years as a young teenager to brutal, inhumane, and degrading abuse by his state custodians at Mt. Meigs, a segregated reform school for “Negro children” in Alabama. Had counsel presented this readily available mitigating evidence, there is a reasonable probability that at least one juror would have been moved to exercise mercy and spare Andrews’s life. Yet the California Supreme Court denied relief in a 5-to-2 decision, concluding that counsel’s performance was neither deficient nor prejudicial. See In re Andrews, 28 Cal.4th 1234, 124 Cal.Rptr.2d 473, 52 P.3d 656 (2002).
. Fundamentally, it is unconscionable to sentence, a man to death absent consideration of mitigating evidence of this magnitude, particularly where counsel failed to present any meaningful mitigation evidence. Our “ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.” Strickland v. Washington, 466 U.S. 668, 696, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the standard of review mandated by the Antiterrorism and Effective Death Penalty Act (AEDPA), the “pivotal question is whether the state court’s application of the Strickland standard was unreasonable.” Harrington v. Richter, 562 U.S. 86, 101, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). The California Supreme Court’s determination that counsel’s performance was neither deficient nor prejudicial is riot just wrong, it is unreasonable under the clearly established law of Strickland and its progeny. Thus, even under the deferential standard of the AEDPA, conditional sentencing relief is warranted. ■
I.
Andrews was sent to the Alabama Industrial School for Negro Children, later known as Mt. Meigs, in the mid-1960s, after stealing a car. He had no prior history of violent crime. He entered the school when he was 14. He left when he was 16.
The California judge who conducted the state court evidentiary hearing described Mt. Meigs as a “segregated brutal institution near Montgomery, Alabama;” The state court hearing judge found that' the conditions at Mt. Meigs were horrific, and that Andrews was personally subjected to “béatings, brutality, inadequate conditions and sexual predators.” Due to “his small stature and passive nature,” Andrews was “the target for older boys’ depredations.” The California Supreme Court itself acknowledged that Andrews persorially endured “appalling” conditions at’Mt. Meigs. See Andrews, 124 Cal.Rptr.2d 473, 52 P.3d at 660.
At the state court evidentiary hearing ordered by the California Supreme Court, several outside observers corroborated the *1047 accounts of abuse at Mt. Meigs. A United States federal judge, testified that Mt. Meigs, during the time Andrews was there, was a “penal colony” that represented the “absolute denial of basic and fundamental human rights to [African-American] children.” A former state probation officer described Mt. Meigs as a “slave camp” for children, run by “illiterate overseers.” who forced children to work in the fields harvesting vegetables and picking cotton. The children were “beaten' all the time,” sometimes with broomsticks, mop handles, and fan belts, and often severely for minor infractions. Violence was pervasive and sexual assaults were common. The state probation officer testified that children committed to Mt. Meigs in the 1960s had no chance of rehabilitation and “came out much worse” than when they entered. The probation officer, who testified before Congress and state legislatures about juvenile justice facilities around the country, stated that Mt. Meigs was “by far, by far ... the worst facility” that he had seen.
Despite being termed a “school,” Mt. Meigs provided little to no education, counseling, or vocational programs to the children in its custody. See Andrews, 124 Cal.Rptr.2d 473, 52 P.3d at 677 (Kennard, J., dissenting). And in 1971, an. Alabama district court ordered extensive reforms at the institution after finding that “corporal punishment was promiscuously employed by the school’s personnel” and agreeing that “[w]hen officials of a training school have condoned or permitted the frequent and indiscriminate use of corporal punishment ... they have demonstrated the callous indifference to children’s safety which provides the basis for Eighth Amendment liability” as cruel and unusual punishment. Order, Stockton v. Alabama Industrial School for Negro Children, No. 2834-N (N.D. Ala. July 23, 1971) (adopting proposed findings of fact and conclusions of law); see also Crum v. State Training Sch. for Girls, 413 F.2d 1348, 1349 (5th Cir. 1969) (ordering the desegregation of Mt. Meigs after finding that it was “inferior in every way” to similar schools for white children).
Andrews was not spared. The state court record chronicles in excruciatingly vivid detail the abuse he personally suffered. When Andrews- failed to pick enough cotton, left the grass too high- in the fields, or made a mistake in the dining hall, he was whipped with a fan belt or beaten with a stick. The record indicates that Andrews was beaten so severely the skin on his thighs would “bust open.” On other occasions Andrews and other wards at Mt. Meigs were forced to pull down their pants, lie on the ground on their stomachs, and place their penises in holes in the earth while they were, whipped. The judge who conducted the state court evi-dentiary hearing found the evidence of abuse “compelling.”
The jury that, .sentenced Andrews to. death heard none of this evidence. Yet the California Supreme Court concluded that counsel was not ineffective and, even if, ineffective, there was no reasonable probability of a, different result at sentencing had the jury heard the Mt. Meigs evidence.
That decision is fundamentally and objectively unreasonable. Consideration of a defendant’s life history is a “constitutionally indispensable part of the process , of inflicting the penalty of death.” See Eddings v. Oklahoma, 455 U.S. 104, 112, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (quoting Woodson v. North Carolina, 428 U.S. 280, 304, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (plurality opinion)). Yet Andrews’s counsel presented almost no mitigating evidence at sentencing. The Mt. Meigs evidence is not cumulative to any other evidence presented during the trial or penalty phase. The evidence was readily available. Its sympathetic nature is patently obvious. And *1048 without consideration of the degrading abuse that Andrews endured, the jury that sentenced Andrews to death could not fairly “gauge his moral culpability.” See Porker v. McCollum, 558 U.S. 30, 41, 130 S.Ct. 447, 175 L.Ed.2d 398 (2009) (per curiam). Confidence in the sentencing outcome has been undermined. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
I recognize that our deference to state court decisions is at'its zenith on federal habeas review. See generally Richter, 562 U.S. at 104, 131 S.Ct. 770. Under the AEDPA, federal courts are barred from granting habéas relief as to state court convictions if jurists of reason could debate the correctness of the state court’s decision. See id. at 101, 131 S.Ct. 770. “A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.” Id. Federal habeas relief is warranted, however, if “the state court identifies the correct governing legal principle” from the decisions of the Supreme Court but unreasonably applies that principle to the facts of the petitioner’s case. Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); see 28 U.S.C. § 2254(d)(1). This case meets that stringent standard for collateral relief on federal habeas review.
II
Regarding Strickland’s first prong, the California Supreme Court unreasonably applied clearly established federal law in concluding that counsel’s performance at the penalty phase was adequate.
“[Cjounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.”Strickland, 466 U.S. at 691, 104 S.Ct. 2052. When counsel have not fulfilled “their obligation to conduct a thorough investigation of the-defendant’s background,” their failure to identify and set forth ' substantial mitigating evidence at sentencing cannot be justified as a “tactical decision.” See Williams, 529 U.S. at 396, 120 S.Ct. 1495 (citing 1 ABA Standards for Criminal Justice 4-4.1, commentary, p. 4-55 (2d ed. 1980)); see also Wiggins v. Smith, 539 U.S. 510, 521-22, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).
Andrews’s trial counsel conducted “virtually no penalty phase investigation” and “did not call a single witness at the penalty phase.” Andrews, 124 Cal.Rptr.2d 473, 52 P.3d at 676 (Kennard, J., dissenting). Nor did counsel ask their investigators to do any work on the penalty phase. Indeed, Andrews’s counsel made no serious effort to discover mitigating evidence.[1]
*1049 The state court judge, who presided over the evidentiary hearing expressly found that defense counsel could have uncovered the Mt. Meigs evidence with “simple persistence” and standard investigative’techniques. See Andrews, 124 Cal.Rptr.2d 473, 52 P.3d at 680 (Kennard, J., dissenting); see also id. 124 Cal.Rptr.2d 473, 52 P.3d at 681 (noting that routine legal research of public records would have revealed lawsuits involving these Alabama institutions). The California Supreme Court does not dispute that finding. See Andrews, 124 Cal.Rptr.2d 473, 52 P.3d at 668.
A
The California Supreme Court, however, excused counsel’s failure to discover the Mt. Meigs evidence for a number of unsupported and unsupportable reasons, con-, eluding that counsel’s investigation' was constitutionally adequate because: (1) Andrews did not want his family involved; (2) Andrews did not tell counsel about the appalling conditions he endured while confined at Mt. Meigs; (3) the Mt. Meigs evidence could have backfired, for the evidence would have comé primarily from prisoners; (4) counsel’s limited investigation was reasonable because counsel had a reasonable strategy at the penalty phase; and (5) the Mt. Meigs evidence could have opened the door to more evidence regarding Andrews’s prior acts of violence. Not one of these rationales withstands scrutiny or excuses counsel’s failure to perform a basic investigation into his client’s life history.
(1) Andrews’s Refusal to Involve his Family.
The California Supreme Court found counsel’s limited investigation adequate partly because Andrews refused" to involve his family at the penalty phase. See Andrews, 124 Cal.Rptr.2d 473, 52 P.3d at 668. The California Supreme Court reasoned as follows: “Although the referee found’that counsel could have discovered the mitigating evidence presented at the reference hearing with ‘simple persistence,’ it is equally clear petitioner insisted they not involve his family. ‘As we have repeatedly explained, an attorney representing a defendant at the penalty phase of a capital case is not required to present potentially mitigating evidence over the defendant’s objectionsId. (quoting People v. Kirkpatrick, 7 Cal.4th 988, 30 Cal.Rptr.2d 818, 874 P.2d 248 (1994)).
The California Supreme Court is correct that Andrews did not want his family involved. And it is also correct that the “reasonableness of counsel’s actions may be determined or substantially influenced by the defendant’s own statements or actions.” See Strickland, 466 U.S. at 691, 104 S.Ct 2052. ■ However, excusing counsel’s failure to present the Mt. Meigs evidence based upon Andrews’s refusal to involve his family is unreasonable on its face for a simple reason: presenting the Mt. Meigs evidence would not have required any involvement by Andrews’s family. Instead, as accounted herein, defense counsel could have introduced1 the Mt. Meigs evidence by admitting public records and by presenting the testimony of numerous experts and respected observers,
*1050 The state court’s rationale is also unreasonable in light of the record before it. Andrews’s trial attorney testified at the state court evidentiary hearing that Andrews imposed no limitations on a penalty phase investigation into his background, apart from not wanting to> have his family testify. The state court hearing judge found no obstacle to calling witnesses who were not members of Andrews’s family.
It was therefore unreasonable-for the California Supreme Court to excuse counsel’s failure to present the Mt. Meigs evidence based upon Andrews’s refusal to involve his family. See 28 U.S.C. § 2254(d)(2) (stating that federal habeas relief is warranted if the state court decision was based upon an unreasonable determination of facts in light of the evidence presented in the state court proceeding); cf. Porter, 558 U.S. at 40, 130 S.Ct. 447 (stating that counsel’s decision not to investigate must reflect a “reasonable professional judgment,” even when the client is “fatalistic or uncooperative”).
(2) Andrews’s Failure to Tell. Counsel About His Time at Mt. Meigs.
The California Supreme Court also faulted Andrews for not telling trial counsel about the appalling conditions he endured while at Mt. Meigs. See Andrews, 124 Cal.Rptr.2d 473, 52 P.3d at 668 (“While counsel were aware petitioner had been incarcerated in the Alabama prison system, he did not inform them of the conditions he endured thereby alerting them to the need for further investigation of possible mitigation.”). However, no evidence in the record suggests that counsel ever asked Andrews any questions that would have elicited that history. See Andrews, 124 Cal.Rptr.2d 473, 52 P.3d at 681 (Kennard, J., dissenting) (stating Andrews “did not withhold that information. His attorneys never raised the subject.”).[2] Nor is there any evidence that Andrews, “described by one of his trial attorneys as ‘very cooperative,’ would have refused to discuss his reform school and prison experiences in' Alabama had he been asked about' them.” Id.
Given those facts, the California Supreme Court was unreasonable in placing the burden on Andrews to comprehend and offer mitigation theories at the penalty phase of his own trial. Under clearly established Supreme Court law, legal strategy is the duty and domain of learned counsel; while a defendant “has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal,” legal strategy decisions are matters of professional judgment that fall within counsel’s domain and are the responsibility of counsel. See Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). And, as accounted above, the most basic of investigations into Andrews’s life history would have uncovered the evidence of the abuse he suffered. Cf. Williams, 529 U.S. at 395, 120 S.Ct. 1495 (finding counsel deficient for failing to review defendant’s juvenile records that “would have uncov *1051 ered extensive records graphically describing [defendant’s] nightmarish childhood”).
(3) The Reliance on Prisoners . to Present the Mt. Meigs Evidence
The California Supreme Court further concluded it was reasonable for counsel not to present the Mt. Meigs evidence because such evidence could have backfired as it “would come primarily from the testimony of petitioner’s fellow prisoners, many of whom were hardened criminals with serious felony records.” See Andrews, 124 Cal.Rptr.2d 473, 52 P.3d at 668-69.[3]
However, the' Mt. Meigs evidence was not dependent upon testimony from prisoners. At Andrews’s state court evidentia-ry hearing, “a federal district judge, a priest, a college dean, a clinical psychologist, a longtime prison doctor, and the regional director of the Federal Bureau, of Detention, all ... gave powerfully effective testimony about the shocking conditions at” Mt. Meigs. Andrews, 124 Cal.Rptr.2d 473, 52 P.3d at 681 (Kennard, J., dissenting); e.g., id. 124 Cal.Rptr.2d 473, 52 P.3d at 677 (discussing testimony of federal district court judge Ira Dement, who referred to Mt. Meigs as a “penal colony for children”).
In light of the state court record, it therefore was unreasonable for the California Supreme Court to excuse counsel’s failure to present the Mt. Meigs evidence on the basis that such evidence would have primarily depended upon the testimony of prisoners. See 28 U.S.C. § 2254(d)(2); see also Wiggins, 539 U.S. at 528, 123 S.Ct. 2527 (stating that “partial reliance on an erroneous factual finding” can show “the unreasonableness of the state court’s decision.”).
(4) Counsel’s Penalty Strategy
The California Supreme Court expressly acknowledged that the record at the state court evidentiary hearing suggested that counsel could have, conducted a more thorough investigation into Andrews’s background. See Andrews, 124 Cal.Rptr.2d 473, 52 P.3d at 669. However, the California Supreme Court ultimately concluded that counsel’s penalty phase performance was adequate ■ because counsel had decided upon a reasonable strategy, one that apparently did not involve or require -any meaningful preliminary investigation into Andrews’s social history., Accor ding to the California Supreme Court, counsel presented a “reasonable case for sparing petitioner’s life” by (1) portraying Andrews “as a follower rather than as violently antisocial”; and (2) arguing a death sentence was not warranted because “others .who had committed more heinous multiple murders” were not sentenced to death and Andrews’s co-defendant Sanders had received a lighter sentence. See id.
The- California Supreme Court’s decision is unreasonable because neither strategy was supported by the evidence presented at trial. Further, the state court’s decision is- unreasonable because it ignores counsel’s “duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unneces *1052 sary.” Strickland, 466 U.S. at 691, 104 S.Ct. 2052.
The evidence as to the crimes of conviction which rendered Andrews death eligible belied the depiction of Andrews as a follower, rendering counsel’s penalty phase pitch to 'the jury contrary to the record, hollow, and false. See Andrews, 124 Cal.Rptr.2d 473, 52 P.3d at 682 (Kennard, J., dissenting) (“[T]hat was a disastrous strategy, one no reasonably competent attorney would have used”). Indeed, “the only evidence before the jury was that petitioner was the instigator rather than a follower.” Id. The “evidence showed that [Andrews] was the leader and the perpetrator of the crimes while Sanders was the follower; thus, jurors were not likely to be troubled by Sanders’s lighter sentence.” Id.
Given the evidence at trial, no reasonable argument can be made that counsel’s strategy to depict Andrews as a follower was reasonable, particularly when it was unsupported by a basic investigation into Andrews’s background to determine what other mitigating evidence was' available. See Bobby v. Van Hook, 558 U.S. 4, 130 S.Ct. 13, 17, 175 L.Ed.2d 255 (2009) (stating that counsel must'make “objectively reasonable choices”) (quoting Roe v. Flores-Ortega, 528 U.S. 470, 479, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000)); see Wiggins, 539 U.S. at 527, 123 S.Ct. 2527 (“Strickland does not establish that a cursory investigation automatically justifies a tactical decision with respect to sentencing strategy.”).
The California Supreme Court cited Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987), as supporting the proposition that it is reasonable to forego mitigating evidence when it would open the door to rebuttal evidence which would- contradict counsel’s strategy of portraying defendant as the follower. See Andrews, 124 Cal.Rptr.2d 473, 52 P.3d at 673 (citing Burger, 483 U.S. at 793, 107 S.Ct. 3114). The California Supreme Court’s reliance on Burger is unreasonable for two reasons. First, in Burger, defense counsel performed a robust initial mitigation investigation and spoke to a family member, a friend, and a psychologist to learn about his client’s background. See Burger, 483 U.S. at 790-91, 107 S.Ct. 3114. Based upon what Burger’s counsel learned, counsel decided against pursuing a mitigation case relying on that background, id. at 791, 107 S.Ct. 3114, even though it turned out that further, investigation would have produced additional evidence that defendant had “an exceptionally unhappy and unstable childhood.” Id. at 789, 107 S.Ct. 3114. As the Supreme Court concluded, counsel’s initial investigation led him to make the “reasonable decision that his client’s interest would not be served by presenting this type of [mitigating] evidence.” Id. at 791, 107 S.Ct. 3114. The facts of this case are very different. Unlike Burger’s defense counsel, Andrews’s attorneys never performed any meaningful initial investigation into their client’s background. Absent such an investigation, the lawyers cannot be said to ' have made informed strategic choices about how to-proceed in a possible penalty phase of trial;
Second and relatedly, in Burger, counsel’s depiction of his client as a follower was a reasonable strategy for it was supported by the record. See Burger, 483 U.S. at 779, 107 S.Ct. 3114 (noting primary evidence at trial showed that Burger’s co-defendant Stevens “was primarily responsible for the plan to kidnap the [victim], the physical abuse of the victim, and the decision to kill him”). In contrast, the evidence at Andrews’s trial plainly showed that Andrews was not a follower, but the main criminal actor. Thus, the California Supreme Court’s statement that “we reach the Same conclusion on comparable facts,” see Andrews, 124 Cal.Rptr.2d 473, 52 P.3d at 673, is wrong for the facts in Burger are not comparable. The California Supreme *1053 Court’s reliance on Burger is unreasonable.
The California Supreme Court also unreasonably applied Supreme Court law when it cited Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002), to support its conclusion that counsel reasonably decided not to present evidence of Andrews’s background. See Andrews, 124 Cal.Rptr.2d 473, 52 P.3d at 673 (citing Cone, 535 U.S. at 699-700, 122 S.Ct. 1843). Before noting that defense counsel saw the neighborhood Andrews grew lip in and considered it unimpressive because it was comparable to counsel’s own, the California Supreme Court cited Cone for the proposition that counsel may reasonably decide not to present background evidence when testimony about a defendant’s “normal youth” might, in the eyes of the jury, be perceived negatively and cut the other way. See id. However, all reasonable jurists would agree that the years Andrews spent at Mt. Meigs were the antithesis of a “normal youth.” The California Supreme Court’s invocation of Cone, while simultaneously ignoring that Andrews’s “youth” included his experience at Mt. Meigs, was an objectively unreasonable application, of Supreme Court law. See Wiggins, 539 U.S. at 526-27, 123 S.Ct. 2527 (observing that the “strategic decision” offered “to justify counsel’s limited pursuit of mitigating evidence resembles ... a post hoc rationalization of counsel’s conduct.”); cf. Porter, 558 U.S. at 43, 130 S.Ct. 447 (concluding that state supreme court was “unreasonable to discount to irrelevance the evidence of Porter’s abusive childhood”).
(5) Opening the Door to Andrews’s Prior Acts of Violence.
Finally, the California Supreme Court concluded counsel’s failure to present the Mt. Meigs evidence, among other mitigation evidence, was reasonable because such evidence could have opened the door to more evidence regarding Andrews’s prior acts of violence. See Andrews, 124 Cal.Rptr.2d 473, 52 P.3d at 669 (stating that by not introducing the evidence, counsel “foreclosed the introduction of substantial aggravating, evidence in rebuttal or on cross-examination that could have undermined the defense by depicting petitioner as aggressive and desensitized to violence”). The California Supreme Court’s decision on this point is unreasonable for at least two reasons.
One, the prosecutor from Andrews’s trial, who in the interim,; had become a superior court judge, “testified that if the defense had presented evidence of the Alabama prison conditions he probably would not have called rebuttal witnesses to give details about petitioner’s Alabama crimes.” See Andrews, 124 Cal.Rptr.2d 473, 52 P.3d at 682 (Kennard, J., dissenting).[4]
Two, even if the prosecutor had rebutted with more evidence regarding Andrews’s prior violent crimes,[5] the jury already *1054 knew based upon Andrews's heinous crimes of conviction that .-he was “aggressive and desensitized to violence.” The jury also knew, by stipulation, of Andrews’s prior convictions for murder in 1967, armed robbery in 1968, escape in 1969, and robbery in 1977 which the prosecution introduced as. aggravating factors at the penalty phase.[6] More evidence regarding Andrews’s prior convictions would have reinforced what the jury already ■ knew, namely that Andrews committed heinous crimes and clearly was “aggressive 'and desensitized to violence.”
" The clearly established law of Strickland itself supports the conclusion that the California‘Supreme Court’s decision was unreasonable. In Strickland, it was reasonable for counsel not to present mitigating evidence that “would barely have altered the sentencing profile” and could have opened the door to prior convictions which counsel had successfully moved to exclude. 466 U.S. at 699-700, 104 S.Ct. 2052. So too in Darden v. Wainwright, where counsel’s decision to present an alternate strategy at sentencing was reasonable because evidence regarding defendant’s background could have opened the door to his prior convictions that had not previously been admitted in evidence. See 477 U.S. 168, 186, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).
In contrast, in cases where a defendant’s prior criminal history is known to the jury, counsel performs unreasonably in not presenting a range of persuasive mitigating evidence about the defendant’s background that “no other source had opened up.” See Rompilla v. Beard, 545 U.S. 374, 383, 390, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005) (finding counsel ineffective when counsel knew the prosecution would introduce at the penalty phase defendant’s “significant history” of prior violent crimes, but counsel nevertheless failed to review the readily available prior conviction .file and present mitigation evidence therefrom); see also Williams, 529 U.S. at 368-69, 395, 120 S.Ct. 1495 (finding counsel’s performance deficient when the jury knew of Williams’s extensive violent criminal history, and counsel failed to review juvenile records that would have uncovered graphic mitigating evidence of Williams’s “nightmarish childhood”). At a minimum, counsel has a duty to conduct the necessary investigation into his client’s background to learn the range of mitigating evidence available. See Williams, 529 U.S. at 395-96, 120 S.Ct. 1495.
B
In sum, there was no conceivable tactical reason either to forego the investigation into Andrews’s background or to forego the presentation of the compelling Mt. Meigs evidence. Any competent attorney would have concluded that the Mt. Meigs evidence was the only evidence in this case that carried a substantial probability of a different sentence. That evidence is critical precisely because it provides the jury with a' reason to extend mercy despite Andrews’s heinous crimes. As such, any competent attorney would have presented the evidence, argued that the abuse Andrews suffered as a youth at the hands of his state custodians explains why he is inured to violence, and urged the jurors to spare Andrews’s life on that ground.[7]
*1055 The California Supreme Court recognized that the United States Supreme Court held in Williams that habeas relief was warranted when counsel' failed at the penalty phase to present to the jury evidence of petitioner’s “nightmarish childhood,” model behavior while imprisoned, and borderline retardation. See Andrews, 124 Cal.Rptr.2d 473, 52 P.3d at 674. The California Supreme Court, however, distinguished Williams because, in that case, counsel’s investigation was “essentially nonexistent due to an incorrect understanding of the law.” See id. (citing Williams, 529 U.S. at 395-96, 120 S.Ct. 1495). The California Supreme Court is correct that in Williams, counsel’s failure to investigate was based at least in part upon his incorrect understanding, of the law. But surely no reasonable jurist would read Williams as holding that a virtually nonexistent penalty phase investigation is reasonable so long as it is not based upon a misunderstanding of the law. Indeed, the United States Supreme Court does not read Williams so'narrowly. In Wiggins, the Supreme Court underscored that in Williams it held the “failure to uncover and present voluminous mitigating evidence at sentencing could not be justified as a tactical decision ... because counsel had not %lfill[ed] their obligation to conduct a thorough investigation of the defendant’s background.’” See Wiggins, 539 U.S. at 522, 123 S.Ct. 2527 (quoting Williams, 529 U.S. at 396, 120 S.Ct. 1495).
The duty to conduct a thorough investigation of a capital defendant’s background is imposed on counsel to prevent this very circumstance: a man sentenced to death without consideration of non-cumulative, readily available personal history evidence of compelling mitigating value. The California Supreme Court unreasonably applied clearly established federal law when it concluded that defense counsel’s performance was constitutionally adequate in this case.
Ill
Under Strickland’s second prong, the California Supreme Court majority concluded that even if Andrews’s counsel performed inadequately, Andrews suffered no prejudice from the omission of the Mt. Meigs evidence at sentencing. That conclusion too is based upon an objectively unreasonable application of Strickland and its progeny.
Under Strickland, a capital defendant suffers prejudice .from counsel’s deficient performance when “there is a reasonable probability that, absent the errors [of counsel], the sentencer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.” Strickland, 466 U.S. at 695, 104 S.Ct. 2052. As Strickland clarified, “[a] reasonable probability is a probability sufficient to undermine confidence in the outcome,” not a probability that the result “more likely than not” would have been different. Id. at 693-94,104 S.Ct. 2052. For a state court considering a habeas petition asserting ineffective assistance of counsel, the inquiry is straightforward: counsel’s deficient performance prejudiced the petitioner if he can show “a reasonable probability that at least one juror” would have recommended a sentence of life instead of death. Wiggins, 539 U.S. at 537, 123 S.Ct. 2527. For a federal court reviewing a habe-as petition filed after the AEDPA’s pas *1056 sage, the determinative question is whether the state court’s finding that petitioner was not prejudiced was not just error, but “was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1); see Cullen v. Pinholster, 563 U.S. 170, 181, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011).
In this case, the California Supreme Court concluded there was no reasonable probability of a life sentence even if counsel had presented the mitigating evidence regarding Andrews’s background. Unlike the majority, I would hold that such a conclusion constitutes an unreasonable application of federal law that was clearly established at the time of the state court’s decision. . ,
A
Consideration of the defendant’s life history is a “constitutionally indispensable part of the process of inflicting the penalty of death.” Eddings, 455 U.S. at 112, 102 S.Ct. 869. The abuse that Andrews suffered at Mt. Meigs epitomizes the “kind of troubled history” that the Supreme Court repeatedly has “declared relevant to assessing a defendant’s moral culpability.” Wiggins, 539 U.S. at 535, 123 S.Ct. 2527; see also id. at 535-36, 123 S.Ct. 2527 (holding a different sentencing outcome was reasonably probable had defense counsel presented evidence that Wiggins suffered early privation and abuse, as well as physical torment, sexual molestation, and repeated rape in foster care). Such evidence is “relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse.” Boyde v. California, 494 U.S. 370, 382, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990) (internal quotations marks omitted).
Without.consideration of the compelling and readily available Mt. Meigs evidence, Andrews’s moral culpability could not be fairly gauged at sentencing. See Porter, 558 U.S. at 41, 130 S.Ct. 447. Indeed, the “benchmark” for assessing an .ineffective assistance claim is “whether counsel’s conduct so undermined the proper, functioning of the adversarial process that the trial cannot be relied on as having produced a just result.” Strickland, 466 U.S. at 686, 104 S.Ct. 2052. Here, counsel’s failure to present the evidence of severe abuse that Andrews suffered, combined with counsel’s failure to present any substantial mitigation case at sentencing, deprived Andrews of a fair sentencing proceeding and renders his death sentence ■ “unreliable.” See id. at 700,104 S.Ct. 2052. At bottom, it was unreasonable for the California Supreme Court ’ to conclude that if the jury had heard the Mt. Meigs evidence, there is no reasonable probability that even one juror would have recommended a sentence of life instead of death.
The majority disagrees and observes that the Supreme Court “has found a reasonable probability of a different outcome when scant and weak aggravating evidence could have been presented in rebuttal to strongly mitigating evidence.” Majority at 1023 (citing Wiggins, 539 U.S, at 534-36, 537-38, 123 S.Ct. 2527). Yet the Supreme Court has also found a reasonable probability of a different outcome when aggravating evidence is substantial and mitigating evidence is compelling. See Williams, 529 U.S. at 398, 120 S.Ct. 1495; Porter, 558 U.S. at 40-44, 130 S.Ct. 447. Indeed, at the time of the California Supreme Court’s decision in this case, no decision by the United States Supreme Court had excused a failure to present a compelling mitigation case where one was available.
As the majority recognizes, Williams and’ Porter are particularly instructive. In *1057 Williams, the Supreme Court held there was a reasonable probability of a different result at sentencing if counsel had presented evidence either of defendant’s “nightmarish childhood” or his diminished intellectual ability. See Williams, 529 U.S. at 398, 120 S.Ct. 1495. Notably, unlike in this case, Williams’s counsel actually presented mitigating evidence, including testimony from two neighbors and Williams’s mother, and “a taped excerpt of a statement by a psychiatrist.” See id. at 369, 120 S.Ct. 1495. Contrary to the majority’s description of the case, the aggravating factors in Williams were severe. Two prosecution expert witnesses testified at sentencing “that there was a ‘high probability’ that Williams would pose a serious continuing threat to society.” See id. at 368-69, 120 S.Ct. 1495. And the jury heard evidence that in.the months after the murder for which Williams was sentenced to death, “Williams savagely beat an elderly woman, stole two cars, set fire to a home, stabbed a man during a robbery, set fire to the city jail, and confessed to having strong urges to choke other inmate's and to break a fellow prisoner’s jaw.” Id. at 418, 120 S.Ct. 1495 (Rehnquist, C.J., concurring in part and dissenting in part) (quoting Williams v. Taylor, 163 F.3d 860, 868 (4th Cir. 1998), rev’d, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)); see id. at 368, 120 S.Ct. 1495 (providing the majority’s description of the aggravating evidence, including that Williams: had committed, “two separate violent assaults on elderly victims,” specifically setting a fire outside one elderly victim’s house before attacking and robbing him, and leaving the other elderly victim, a woman, in a “vegetative state”; was convicted of arson for the fire he set in the jail while awaiting trial; and had prior convictions for armed robbery, burglary, and grand larceny).
Despite these strong aggravating factors, the Supreme Court held that Williams was prejudiced by his counsel’s failure to introduce the undiscovered mitigation evidence. Importantly for this case, the Court stated that the evidence regarding Williams’s “nightmarish childhood” would have been enough, standing alone, to sustain a finding of prejudice. As the Court expressly held, “the graphic description of Williams’ childhood, filled with abuse and privation, or the reality that he was ‘borderline-mentally retarded,’ might well have influenced the jury’s appraisal of his moral culpability.” See id. at 398, 120 S.Ct. 1495 (emphasis added).
Williams plainly supports the conclusion that' the California Supreme Court unreasonably applied clearly established federal law in concluding that Andrews was not prejudiced by his counsel’s failure to introduce evidence of the extreme brutality that Andrews suffered as a youth. The total evidence in aggravation, that- which was admitted and that which may have come in as rebuttal evidence concerning Andrews’s prior, violent crimes (which the prosecutor testified at the state court- hearing he probably would not have introduced), was certainly no greater than the aggravating evidence in Williams. Similar to Williams, the overlooked mitigating evidence in Andrews’s case includes severe and sustained physical, sexual, and psychological abuse. Andrews’s overlooked mitigating evidence is made even stronger by the fact that the abuse at issue was inflicted in large part at the hands of his state custodians and was broadly corroborated by respected authorities, as previously accounted.[8]
*1058 The Supreme Court’s decision in Porter also demonstrates the unreasonableness of the California Supreme Court’s conclusion that Andrews was not prejudiced. Although the Supreme Court decided Porter after the .California Supreme .Court denied . Andrews’s . ineffective assistance claim, Porter is still relevant to assessing prejudice under 28 U.S.C. § 2254(d).[9] See Wiggins, 539 U.S. at 522, 123 S.Ct. 2527 (approving reliance on Supreme Court opinions issued after the state court’s decision, when the merits of the claim were governed by the holdings of Strickland).
In Porter, due to counsel’s failure to adequately investigate Porter’s background, the 'jury that sentenced him to death never knew that he had been abused as a child and was a decorated Korean War veteran suffering from post-traumatic stress. See Porter, 558 U.S. at 40-44, 130 S.Ct. 447. The Supreme Court held that the Florida Supreme Court was unreasonable in concluding that Porter had not been prejudiced at sentencing by the omission of this key personal history evidence. The Supreme Court concluded that without that evidence, the sentencer was unable to “accurately gauge” the defendant’s “moral culpability” and habeas relief was warranted- because confidence in the sentencing outcome had been undermined. See id.- at 41, 130 S.Ct. 447; see also Rompilla, 545 U.S. at 393, 125 S.Ct. 2456 (stating that the relevant -test is not whether the jury, had it heard the omitted mitigating evidence, could still have returned a verdict of death).[10]
As in Williams, the Supreme Court in Porter affirmed that a strong case in aggravation does not preclude the conclusion that a state court was unreasonable in *1059 denying habeas relief. Porter stood convicted of two murders and faced considerable evidence of premeditation, but the Supreme Court nonetheless held it was objectively unreasonable for the Florida Supreme Court to conclude that Porter had not been prejudiced at sentencing by the omission of the mitigating evidence. Porter, 558 U.S. at 31, 130 S.Ct. 447. The same conclusion applies in Andrews’s case. Despite strong aggravating evidence, there is a reasonable probability of a different result at sentencing if the jury had heard the powerful evidence of the abuse Andrews suffered as a youth. It is unreasonable to conclude otherwise.
The majority disagrees. Relying on the Supreme Court’s opinion in Woodford v. Visciotti, 537 U.S. 19, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002), decided after the California Supreme Court’s decision in this case, the majority insists it was not unreasonable to hold that Andrews suffered no prejudice. Majority at 1031-32. The majority is mistaken. The balance of mitigating and aggravating factors in Visciotti was dramatically different from the balance in Andrews. In Visciotti, the potential mitigating evidence at issue was expert testimony addressing the psychological abuse that Visciotti suffered, due to being raised in a dysfunctional family. See Visciotti, 537 U.S. at 26, 123 S.Ct. 357. Visciotti involved no allegations of physical or sexual abuse, and the psychological abuse failed to approach what Andrews experienced at Mt. Meigs. The aggravating evidence in Vis-ciotti included a prior offense in which Visciotti stabbed “a pregnant woman as she lay in bed trying to protect her unborn baby.” See id. Given the strong evidence in aggravation and the relatively weak mitigating evidence, the Supreme Court concluded it was not unreasonable for the California Supreme Court to conclude that Visciotti was not prejudiced by counsel’s failure to introduce the dysfunctional family evidence. Id. at 26-27, 123 S.Ct. 357. In contrast, the facts of Andrews’s case present a very different balance of factors and compel*a different result. The majority’s contention that the Mt. Meigs-evidence at most carries only the “mere possibility of a different outcome,” Majority at 1033, grossly underestimates the mitigating force of that evidence. The Mt. Meigs mitigating evidence in Andrews is extraordinarily strong. The majority’s reliance on Visciotti is unfounded. ' •
B
The California Supreme Court álso reasoned that Andrews was not prejudiced because the Mt. Meigs evidence, in addition'to evidence of abuse Andrews suffered as an adult in the Alabama prison system, is “not conclusively ,and unambiguously mitigating” but “could equally have proved a double-edged sword.” See Andrews, 124 Cal.Rptr.2d 473, 52 P.3d at 670-71. According to the California Supreme Court, “[rjather than' engendering sympathy” such evidence “could well have reinforced an impression of him as a person who had become desensitized and inured to violence and disrespect for the law” or could have confirmed Andrews had “an antisocial'personality.” See id. 124 Cal.Rptr.2d 473, 52 P.3d at 671. That conclusion is unreasonable.
The jury already knew from Andrews’s heinous,crimes of conviction and from the stipulated prior convictions that Andrews was - antisocial and “had become desensitized and inured to.violenee and disrespect for the law.” No person considering Andrews’s crimes of, conviction would conclude otherwise. But the jurors knew absolutely nothing about Andrews’s past that might explain the person he had become and provide a basis for the exercise of mercy. ,
The severe and sustained abuse that Andrews suffered at Mt. Meigs provides *1060 such evidence. The California Supreme Court agreed the evidence presented at the state court hearing “leaves no doubt” Andrews “endured horrifically demeaning and degrading circumstances.” See Andrews, 124 Cal.Rptr.2d 473, 52 P.3d at 670. Yet the jury that sentenced Andrews to death knew nothing about those circumstances. Had the jury heard that for two years as a teenager Andrews was subjected to brutal,' inhumane, and degrading abuse by his state custodians at a segregated reform school for African-American children in Alabama in the 1960s, there is a reasonable probability that at least one juror would have been swayed to exercise mercy and spare Andrews’s life. There is “too much mitigating evidence that was not presented to now be ignored.” Porter, 558 U.S. at 44, 130 S.Ct. 447 (internal quotation marks omitted). No reasonable person would conclude otherwise.
The prejudice to Andrews caused by the omission of the Mt.' Meigs evidence at sentencing is compounded by the fact , that counsel presented no sympathetic mitigating evidence at Andrews’s sentencing. Indeed, at the penalty phase of Andrews’s trial, counsel called no witnesses and' offered no statements from psychologists, family, or friends. In short, defense counsel presented almost nothing to counter the prosecution’s portrayal of their client. The clearly established law of Strickland recognizes that some errors by counsel will have “pervasive effect ,.. altering the entire evidentiary picture.” See Strickland, 466 U.S. at 695-96, 104 S.Ct. 2052. Andrews is such a case.
It is unconscionable that Andrews should be sentenced to death without consideration of the egregious abuse that he suffered'at Mt. Meigs. Had counsel presented the Mt. Meigs evidence at sentencing, it is reasonably probable that at least one juror would have been moved to exercise mercy and spare Andrews’s life. It is objectively unreasonable, and; a legal fiction, to conclude otherwise.
IV
The district court’s conditional grant of sentencing relief should be affirmed. I respectfully dissent;

. The majority cites trips that Andrews's counsel made to Alabama and Florida as evidence that they conducted something other than a cursory penalty phase investigation. Majority at 1012 n.3. Yet by the lawyers’ own account, their penalty phase investigation consisted of just three activities. First, the lawyers spent a day in the Mobile courthouse pulling records of Andrews’s prior convictions. One of the lawyers initially testified that their trip to Alabama included three days of investigation, He changed that account after being confronted with evidence that they were in New Orleans for most of the time, flying to Mobile on a Saturday and returning to New Orleans on the same day. New Orleans had no relation to the case; the dates of the trip “coincided” with Mardi Gras celebrations! Second, only after Andrews's first, trial ended in a hung jury, the lawyers interviewed Andrews’s mother during a layover in the Pensacola' aiiport, after they briefly revisited the Mobile courthouse to examine records of Andrews's prior convictions. The interview did not go into detail about Andrews's background, and the lawyers did not inquire about the names or contact information of relatives or anybody else who knew Andrews and could speak to his history. Third, the lawyers asserted that they spent some time in Mobile during one of their two trips unsuccessfully "looking] for evidence of Jesse's character and good deeds.” The lawyers, however, did not interview a single person, contact any of *1049 Andrews’s family or friends, or look into Andrews’s institutional history. Similarly, the two defense investigators testified that their efforts were limited to the guilt phase, and that neither of Andrews’s attorneys asked them to do any investigation into Andrews’s background for a possible penalty phase. The California Supreme Court’s referee characterized counsel’s “actual efforts" to gather mitigating evidence for the penalty phase as “limited,” a characterization which in light of this record is understated, if not overly generous.

. The majority generally and repeatedly accuses the dissent of engaging in a de novo review when evaluating whether the California Supreme Court's determinations were reasonable. Yet deference does not eviscerate our duty to examine and’ evaluate the record to determine the reasonableness of the state court’s conclusions. Further, in engaging in that inquiry, it is entirely proper to look to a state court dissenting opinion that may shed light on whether the state court majority's determinations were reasonable or unreasonable in light of the record as a whole. Facts on federal habeas review are not limited to only the facts stated in the state supreme court’s' majority opinion. Cf. 28 U.S.C. § 2254(d)(2) (stating that federal habeas relief is warranted if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented").

. The California Supreme Court's opinion often conflates the evidence of abuse that Andrews suffered as a youth at Mt. Meigs with other potential mitigating evidence he could have introduced regarding the abuse he sustained as an adult in the Alabama prison system. Because counsel’s failure to investigate and introduce the Mt. Meigs evidence, standing alone, plainly rendered counsel’s performance deficient, I only address the Mt. Meigs evidence. However,- the dissent in the California Supreme Court provides an accurate and thorough accounting of the' additional mitigating evidence that counsel could have introduced. See Andreevs, 124 Cal.Rptr.2d 473, 52 P.3d at 676-80 (Kennard, J., dissenting) (describing Andrews’s time in Alabama prisons that were later found to violate the Eighth Amendment’s prohibition against cruel and unusual punishment).

. It is also possible, if not likely, that a California court would not have admitted evidence of prior offenses to rebut the mitigating evidence of childhood abuse that Andrews suffered at Mt. Meigs. Cf. In re Lucas, 33 Cal.4th 682, 16 Cal.Rptr.3d 331, 94 P.3d 477, 510 (2004) (concluding, in a unanimous decision, that mitigating evidence showing "that a defendant suffered abuse in childhood generally does not open the door to, evidence of [a] defendant's prior crimes or other misconduct").

. The majority accurately observes .that the referee and tire California Supreme Court ma- ' jority concluded that if trial counsel had presented the Mt. Meigs evidence, the prosecutor would have introduced rebuttal evidence. Majority at 1014-15 n,8, But that finding fails to take into account the plain statement by the former prosecutor—later a state court judge— that he probably would not have responded .with rebuttal evidence. The referee and California Supreme Court decided not to take the former prosecutor at his word and instead *1054 speculated about what the prosecutor would have done. That decision was unreasonable. Cf. 28 U.S.C. § 2254(d)(2).

. ■ By stipulation, the jury knew that Andrews's 1967 murder conviction was for felony mur- • der stemming from an incident when Andrews, then 16, and an accomplice robbed a grocery store and the accomplice (not Andrews) shot and killed a store clerk during the robbery.

. The California' Supreme Court suggested there was “rio compelling connection” between the un-presented mitigating evidence and the crimes Andrews committed. Andrews, 124 Cal.Rptr.2d 473, 52 P.3d at 672 (quoting In re Ross, 10 Cal.4th 184, 40 Cal.Rptr.2d *1055 544, 892 P.2d 1287, 1305 (1995)). To the extent the California Supreme Court suggested a causal nexus is required between mitigating evidence and defendant’s crimes, the California Supreme Court’s decision was contrary to Supreme Court law. See Skipper v. South Carolina, 476 U.S. 1, 4, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986) (noting “well-established” principle that any relevant mitigating evidence may be considered).

. The Supreme Court later stated that Williams offers "no guidance with respect to whether a state court has unreasonably determined that prejudice is lacking” because AEDPA deference was not applied to the Strickland, prejudice question in Williams. See Cullen v. Pinholster, 563 U.S. 170, 131 S.Ct. 1388, 1410-11, 179 L.Ed.2d 557 (2011) (citing Williams, 529 U.S. at 395-97, 120 S.Ct. *1058 1495); but see Williams, 529 U.S. at 415-16, 120 S.Ct. 1495 (O’Connor, J., concurring) (“I also agree with the Court that, to the extent the Virginia Supreme Court did apply Strickland, its application was- unreasonable”),. In any event, Williams was decided two years before the California Supreme Court denied Andrews’s habeas petition. Thus, tat the time the California Supreme Court decided Andrews’s ineffective assistance claim, Williams was highly relevant for determining what omitted mitigating evidence is prejudicial under Strickland. See Williams, 529 U.S. at 398, 120 S.Ct. 1495 C'[T]he graphic description of Williams’ childhood, filled with abuse and privation, or the reality that he was ‘borderline mentally retarded,’ might well have influenced the jury’s appraisal of his moral culpability.”); see also id. at 415, 120 S.Ct. 1495 (O’Connor, J., concurring) (concluding that Williams was prejudiced by counsel’s failure to present substantial mitigating evidence, including evidence of his “nightmarish childhood,” and that the Virginia Supreme Court was unreasonable in concluding otherwise).

. The majority acknowledges that Porter is relevant to determining whether the California Supreme Court unreasonably applied Strickland. Majority at 1029 ("Although Porter was decided years after the California Supreme Court's opinion in this case, we give its prejudice analysis careful consideration, because Porter considered prejudice under AED-PA, and therefore provides direction for determining what constitutes an unreasonable application of the prejudice prong of Strickland under AEDPA.”).

. The majority criticizes my reference to Rompilla, insisting Rompilla "do[es] not provide any guidance on the issue before us, whether a state court's determination that counsel's deficiency was not prejudicial was an unreasonable application of clearly established Supreme Court precedent.” Majority at 1032-33 n.24. But I cite Rompilla for the well-established principle that the Strickland test for prejudice does not turn on whether the jury still could have returned a death sentence even if it had heard the mitigating evidence. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052 (“The defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability suffi.cient to undermine confidence in the out- ■ come.”). The test is not whether counsel’s inadequate performance “more likely than not altered the outcome in the case.” See id. at 693, 104 S.Ct. 2052.